Mr. Snyder. Good morning. Disappointing to find out that not all these people were here to listen to you. May I proceed? Yes, please. Good morning, Kevin Snyder for Foothills Christian Ministries et al. May it please the court, I will attempt to reserve a few minutes of my time for rebuttal. There are a number of points raised by the party's briefs, and each deserves this court's attention. But unless the court directs otherwise, I would like to focus on two issues. First, on standing, and the second on general applicability. As to standing, there is Article III injury from the Act and its regulations in three ways. First is the personal rights regulation and form, and that interferes with the church's spiritual formation of children. The second is the warrantless searches, the statute that allows for warrantless searches with access to files that could contain clergy penitent notes. And the third is removal of a minister. Can I ask you to focus on the religious services provision with respect to standing? In other words, the provision, the part of the regulation that you attack that says children may seek religious services outside. Thank you, and that's 22 CCR 101-223. Let me focus on standing for a moment. I'm right in thinking this is a pre-enforcement challenge, am I correct? You are correct. Nobody's ever tried to enforce this against you. Correct, Your Honor. And the state says, gee, we read this as giving you the right to require parents to have their children attend religious services at your institution. There's no problem with that as far as we're concerned, and so we've got no quarrel with you. If that is – and that's what they say, and they never tried to enforce it against you. Why in the context of a pre-enforcement challenge then do you have standing to challenge the constitutionality of that provision? Yes, that's an excellent question. Thank you. Give me an excellent answer. Yes, I'd like to focus – draw the court's attention to Libertarian Party of Los Angeles County v. Bowen. And in that case, that was a pre-enforcement challenge. In that case, one of the things that occurred was the state published on its website the challenge provision. And in that – on its website, it said that violators should be reported to appropriate authorities. But isn't this different? The state has said in as clear a terms as they can in its briefing and otherwise, you're not a violator. We're not after you. We don't think you've done anything wrong. The policy you have is fine with us. And that's a little different than saying go out and find us violators and we'll punish them. They've told you what you're doing is okay. If I can direct the court's attention to this document that was filed with the court on Monday by the state. This is the personal rights notice. And how this relates to the libertarian case is this. All right. Put aside your First Amendment free speech claim for a moment. I'm just focusing on your free exercise claim. Absolutely. On this form, you'll notice there are some blanks right here. It says that with regards to the personal rights information that if you have a complaint, you could file with the licensing agency. That language parallels the libertarian case where it says violators should be – can be sent. But isn't the difference between this case and your libertarian case is that the state has informed us and informed you that what you're doing is okay? The state – we would respectfully disagree with that representation. The reason is there is no representation. In both Thomas v. Anchorage and in Tingley and in libertarian, one of the things that this court has said is important is whether or not the state has disavowed enforcement. There has been no disavowal here. But they said in their brief operating a daycare center – this is page 22 – operating a daycare center with a mandatory religious curriculum where made known to prospective parents in advance of enrollment would not violate the religious services provision. That's what you're doing, right, is operating a daycare center with a mandatory religious curriculum, and you're making it known to parents. So how is that not a disavowal of an intent to take any action against you? They've said exactly what you're doing doesn't violate the rule. The problem is that under the regulation, the – a preschool, parochial school cannot – cannot require attendance at a religious service. Well, but that's not what they say. They say as long as you get the parents to sign off on this, the school can require the attendance of the children. And they say it in their brief. If we were to publish a disposition that said the state stipulates that this is what the law is in California, would you have a quarrel with them? We would because – Because you'd just like us to tell them that – you'd like us to tell them that although they're right, you're right too? I don't understand what we're fighting about. We're fighting about this, is that the parochial school has these religious services and activities. They have a handbook that they interview parents, and they give them this. But they have to give a conflicting message. That's your First Amendment claim, free speech claim. I want to turn to that later. It's a separate claim, but I just want to focus for a moment on how your claim here is that the free exercise clause is being violated because we are not allowed to force – compel – force is the wrong word – to require these children to attend religious services because state law has a – what I think is – you think is a contrary provision. And the state says that's not a contrary provision. As long as the parents sign off, you can compel them to attend services. So why aren't you putting your hands around your friend's shoulder and saying kumbaya? Because there's – let me give you two reasons for it. One is that states – our position is that parochial schools have plenary authority over the dissemination of doctrine and spiritual formation. This on its face – and that's my second point – on its face, it says that they can't require that. And so we think that is the violation of the free exercise clause. So your point is that if the state were ever to change its position and enforce this provision in some way against you, you'd have a quarrel with them. And they're saying we don't ever intend to. We think what you're doing is fine. And in the context of a pre-enforcement challenge, I'm just not sure why we have a real controversy about – you have a controversy about other things. I want to let you get to them. But as to this one, it seems to me both sides have joined hands and said do what you want to do. Let me – before I move to the next one, Ken, if I could just put a cap on this one. And that is the district court in both of its opinions cited a statute. It's 1596.792. And it says that as a condition for licensure, every single statute, rule, and regulation must be followed. And here the churches will not provide this notice because it interferes with their – That's your free speech claim. That's also – that is also our First Amendment – I'm sorry, our free exercise. They're over the first. And speech and free exercise are intertwined, of course. And when you go to church, the pastor speaks, the priest speaks, that's speech. But it's also free exercise of religion. So we don't believe you could neatly bifurcate them. I want to let you get to your other claims because I want to – I'm not sure I understand your free exercise. Put aside – let's assume for a moment the State didn't have this religious services provision. It wasn't in the – right. Would you have a free exercise claim as to the mere requirement of licensure? Yes. And if I can move to that, that actually goes to general applicability. And that ties directly to free exercise. So if I may – Yeah, please. I'd like to – because I'm having trouble – if you take that religious services provision out of it. It seems to me you're saying is you can't require us to be licensed because we're a religious institution. And I'm having trouble understanding that claim, so help me with it. So the Supreme Court has said in two cases, Roman Catholic Archdiocese of Brooklyn and Tandon v. Newsom, that laws are not generally applicable if they have exceptions. In fact, they use the adjective any exception. And here we have approximately 19 exceptions. And some of those are specifically secular exceptions. They don't apply to both state – both secular and sacred. Because there are exceptions, the Supreme Court has said that the law is not generally applicable, and therefore it is the court's duty to review it under strict scrutiny. Don't the exceptions have to be for similarly situated? Yes. The exceptions here are for recreation programs, and you're running a daycare center. Isn't that a sufficient distinction? So the term of art that the Supreme Court is using is comparable or comparator.  It's a very similar language. One of the exceptions specifically is a preschool, a state-run preschool. So that has got to be apples to apples. Well, but a state-run facility is separately subject to state regulation, much more intrusive state regulation than yours. So doesn't that make them differently situated in terms of the state interest in this particular form of regulation? We would disagree with that for two reasons. One is that the – it's not in the record what their other regulations are under that other – it would be the Department of Education or the Department of Corrections. Second is that the – under Tandon, you don't look to the corporate structure of the entity, whether it's private or government or public. You look at the activities inside – in this instance, inside of the schoolhouse gates. And so with that in mind, we believe they are proper comparators. Even if some of them are subject to more extensive regulation than you? We don't see that in the record. And indeed, it's not in the record. Well, but, I mean, just by its nature, a state-run institution, everything it does is subject to state regulation because it's the state that's – I mean, I'm not even sure what sense it would make for the state to say, like, it has to give itself a license. Let me point you back to Roman Catholic Archdiocese of Brooklyn. There you had liquor stores, you had accounting offices, you had airports, and you had places of worship. All of those are under different regulatory schemes, some of which are even government-run. And so because the court was – the Supreme Court is far broader than the state would have us be. They would have us be extremely narrow. We see in this situation that there are classrooms. Children have recreation. They have crafts, games, music. That's the same essential things that are happening in the other programs. But they don't require a licensure. They are exempt. Let me understand your claim on this because it has two components. One component, at least in your brief, is we're religious. You can't license us at all. The second one is you can license us, but you've got to treat us the same as similarly situated people. It's really only the second claim you're making, right? You're not really claiming that the state can't license all daycare centers. They don't license all daycare centers. That's not what I'm asking you. Okay. I'm asking you whether or not you're making a claim that the state lacks the ability to license all daycare centers, religious or not. They don't lack the ability.  So your claim is therefore based on this supposed discrimination or exemption, right? Yes. Okay. I just wanted to understand it. So you're not making a general claim that because we are a religious institution, the First Amendment protects us from licensure. No, we're not making that universal claim. We're talking about this act, though. I couldn't tell from your brief. Okay. I want to give you time to get to your free exercise claim, your free speech claim, I'm sorry. Okay. One very brief thought, and that is that the church has already run Sunday schools on the weekend doing essentially the same thing without licensure. So if they could do that, if they could protect children there, they could protect children here. Going to the free speech claim. It is really, I take it, a compelled speech claim. It is a compelled speech claim. And again, both the state and the lower court unfortunately ran away from the text. And you start with the text, and if it's clear, you end the inquiry. There, the state is requiring the churches to put forward a view that they disagree with. They believe that churches have plenary authority on dissemination of doctrine and spiritual formation within their campuses. And this requires them to change the conversation. They could tell the parents about their positions, about the church's programs, but then they have to give a contrary message by the state. Haven't each of the parents that you deal with already agreed that they will have their children taught religious subjects at your school and nowhere else? And so I would give two answers to that. One is that, sadly, parents could fall into apostasy. They start with agreeing, but then later – No, we hate the school. We're pulling our kids, and we're going to take them somewhere else. Not pulling our kids. We're saying we don't want them to get engaged. Doesn't your contract with the parents require that if their kids attend your daycare center, they also attend your services? The contract – that's true, but the contract would be inconsistent with the regulation. And if you violate the regulation, you lose a licensure. Don't you also lose the parent at that point? I mean, what you say is, sorry, you're not sending your kid to these services. You're out of our daycare center. If the school did that, then the school could lose its license and would be unqualified. Except that now I'm back to the beginning because the state says, you want to do that, that's fine with us. We don't have a problem with it. The statute doesn't say that. The fundamental problem with the district court and the state's position is they don't want to deal with the language that the legislature and the regulatory body has given them. We think that that is an error. If I may reserve the last two minutes. You may. Thank you. Mr. Grabarsky? Good morning, and may it please the court. Supervising Deputy Attorney General Todd Grabarsky for the state of California on behalf of appellees. I'd like to start with Judge Hurwitz's question, whether there actually is a harm from the licensure requirement or the religious services provision. We agree with the colloquy that you were engaging in, that plaintiffs can operate their desired preschools and daycare centers with a mandatory religious curriculum that engages in requiring children to attend religious services, to receive religious teachings or spiritual advice. Essentially, we have no quarrel with that. Well, just to clarify the very last issue that came up when your friend was up there. So if the parent agrees in advance that when my child attends this daycare center, there is a mandatory religious service, should the parent at some later time decide, no, I don't want my child to go to these services anymore? The daycare center, on your view, would be within its rights to say, if that's your view, we're kicking you out? Correct. That's DSS's position. That's consistent with the law, in your view? Yes, Your Honor, that's consistent. That's DSS's position. That's consistent with the law. And that, I don't know whether judicial estoppel applies to what you say in court, but it doesn't seem to apply to what you say in your briefs. The state is comfortable being held to that position. Yes, we've represented that in our briefs before this court, before the district court as well. Let me ask you about the free speech claim. You're requiring them to post a notice. There's some case law out there about this topic. And the notice says, essentially, you're free to take your kid – the kids are free to go to other religious services, which is – not exactly matches up with the facts on the ground, given the contract between the parents. Tell me why this doesn't violate the free speech clause. The notice? The requirement of posting of a notice that really is inapplicable because parents have now contracted their way out of this right. The notice is not inapplicable. So, first, it's consistent with the free speech clause because the notice is requiring the preschools and daycares to provide notice of duly enacted laws and regulations, similar to wage and hour or labor laws that restaurants or other places of employment are required to provide notice of. Is your position that as long as the notice is an accurate reflection of state law, there's no free exercise – no free speech claim? Partially, and in addition to that, what the notice is requiring the preschools to provide is consistent with the way that, at least the plaintiffs in this case, contend that they want to operate their preschools. So the notice does not say that children have the right for themselves to opt out of mandatory religious services. Rather, it's the parents who are the ones that get to decide. So it's just like when a parent is deciding whether to enroll their child at a preschool. They go through the enrollment process. The preschool notifies them and says, look, it's a religious preschool. Part of that is mandatory religious services that children cannot opt out of. Do you agree to abide by this requirement of the preschool? If the parent says yes, they'll sign their kid up, enter into a contract with the preschool, and that child will have to attend religious services. If the parent – Does the notice imply, contracts aside, that as a parent I could say, I want to keep my kid in this school, but I want to send him to Buddhist religious services? I mean, it does say you have a right to seek independent religious services, if you will. We know these parents really don't because they've contracted it away. Isn't this notice, in effect, requiring them to say something that's not true at their school? No, Your Honor. The notice could apply in a situation where a preschool does not warn parents or give notice to parents upon enrollment that they are going to engage in religious services. No, but this is a claim brought by this preschool. So I'm not worried about whether or not this notice might be okay with respect to other schools that don't have its beliefs or requirements of mandatory service, mandatory attendance. What they're saying is we have a requirement of mandatory attendance. You signed up for it. But this notice tells you you have a right to go seek services elsewhere, and it doesn't remind you that that ain't true here. It's not merely the contract, the agreement between the parents and the preschool that parents agree to abide by the mandatory conditions of enrollment, that there are statutes and regulations that allow for preschools to create a curriculum and impose mandatory conditions of enrollment. Are they cited in your brief? Yes, and I can repeat them, 22 Code of Regs 101-218 and 101-219. And in addition to that, Health and Safety Code 1597.01, subsection A, provides that when licensing, when undergoing the licensing review process, DSS, the Department of Social Services, cannot engage in a review of the educational content of a preschool's curriculum. So kind of these statutes all working together, kind of as the district court had put it, strike this delicate balance between respecting the religious rights of the preschool and also the religious rights of the families and children. Again, I know that this preschool is saying that we do have a mandatory religious curriculum, but I think explaining in part what the purpose of the religious services provision, it provides that if there were a preschool that did not say up front, okay, we're going to have mandatory religious services, the parent family signs their kid up, and later on a teacher or the preschool director says, okay, you know what, we're actually now going to start imposing our religion and teaching the children our religion. At that point, a parent can cite to the religious services provision and say, look, our religion is different, we don't want, you know, we didn't sign up. This is not a facial challenge for all circumstances. This is a challenge, a pre-enforcement challenge has applied to them. So I'm not sure what difference it makes that this provision would make perfect sense in a different circumstance. I understand that I'm trying to provide color to the rationale behind why the religious services provision exists, and I think, and counsel can correct me if I'm wrong, but I think they are bringing a facial challenge to the state. Do you think they would be complying with the requirement if they put up a notice that said, the state requires us to tell you that state law provides the required disclosure, but you should be aware that given what you agreed to in your enrollment contract, that that right does not apply to you? I think that would be allowed because it's not, sorry, it's not that that provision doesn't apply at all. It's rather citing to other provisions and regulations. The preschool can impose a mandatory religious curriculum. We've notified parents and families that this is part of our preschool. So the religious services provision provides and it comports with our practice of having a mandatory religious curriculum. But then what in the context, I mean, what is the state's interest in making this school post a notice that says, I mean, that seems to, if you read it, if you read the whole thing, as I just described this notice, the notice with the addendum, if you read it and understand all of it, you will decide that it conveys no useful information to you. So what is the point? Well, it's I respectfully disagree that it conveys no useful information. It reminds parents that ultimately, you know, they are the decision makers about their children's attendance at religious services. And that includes when they made that decision by signing their children up to the preschool that contains a mandatory religious curriculum. Perhaps later on the church, you know, maybe when they sign up. And again, I'm thinking about hypotheticals that aren't ripe and aren't part of this case. But I could imagine a situation where preschool of one religion says, OK, we're going to have this mandatory religious curriculum and then alters that curriculum. And then the parents have the notice that, OK, we didn't sign up for this religious education. We signed it up for the first one. So we still have retained our rights under the religious services provision. Again, that's not what's going on here. But what how the plaintiffs describe what they want to do, how they want to operate their preschools, that's fine. We have no quarrel with that. You know, and providing the notice, it doesn't infringe on their free speech rights because it notifies, you know, a duly enacted regulation that, again, we think comports with and we've represented many times, that it comports with what the plaintiff preschools are trying to accomplish here. Can you address their licensing claim and tell me why the in your view, the exemptions don't in effect make this a discriminatory? As an initial matter, they don't have standing to bring that claim. There doesn't appear to be any conflict between the requirement that they be licensed with any stated religious belief that they've stated in their complaint. They don't raise any religious objections to the fact of licensure. They don't say, here's our, you know, our religious practices. The mere act of applying for a license and obtaining a license would conflict with our religion. Well, I think there's an establishment clause claim that sort of goes like this. Not the facts of this case. All religious schools are required to be licensed. Many non-religious daycare centers are not required to be licensed. They're similarly situated and therefore require licensure of the religious ones. It violates the First Amendment. I think that's the claim they're trying to make. So tell me why that fails. It's not true, Your Honor, that all religious programs. Daycare centers run by religious organizations must be licensed. Many other daycare centers run by non-religious organizations have to be licensed. But they say things that are effectively daycare centers that are all secular are not required to be licensed. Therefore, we have a claim. Why don't they have a claim? So I don't think that they've framed their establishment clause claim in that way. That's not how they characterize their establishment clause claim. So that's why that, I suppose, wouldn't work for the establishment. How could I read it that way? I think I could. So tell me if I read it that way why it wouldn't be a good claim. They would have to show, again, when we're talking about free exercise, they have to show a burden. First of all, they have to demonstrate Article III standing, that they are harmed, suffer an injury. In fact, that's caused by the statute. Well, discrimination on the basis of religion is an injury. So their allegation is that the exemption discriminates against religious daycare programs. Let's just assume standing injury for the moment and address the merits of the claim. Yes, Your Honor, so assuming but not conceding. The question is whether the exemption here is discriminatory, right, takes it out of the neutral and generally applicable law. I understand. So assuming injury but not conceding. None of the exemptions described in, you know, that plaintiffs identify or that are listed in the statute impose or undermine California's interest in protecting the health, safety, and welfare of young children and uniquely vulnerable. You know, we're talking about babies and almost newborns. None of the exemptions undermine California's interest in protecting those people in a similar or greater degree than having an unlicensed private preschool or daycare center that plaintiffs wish to operate. So take state preschools, for example, as Judge Miller had identified. Those preschools are subject to an entirely different, though no less stringent, regulatory regime. We have, I think- In code, you know, statutes, regulations. Yes, so we've cited those on page 39 of our answering brief. You know, I can walk, health and safety code 1596.79. They're in the brief. Yes, Your Honor. And in addition to that, the state preschools only serve, or the state preschools that are exempt from licensure by DSS only serve children age four and up. So that, you know, children age four and up, I'm not saying that there aren't risks to them, but the risks of children under four and the risks to children, especially under two, are, you know, vastly different and just of a different nature that, you know, babies have virtually no independence, no ability to care for themselves. They're, you know, need to be constant vigilance when caring for children that young. In addition, care and supervision that's required by daycare centers and preschools, in addition to just making sure that the babies remain alive and remain safe, requires diapering, toilet training, grooming, administration of medication. That's certainly not as, you know, comprehensive as caring for a child age four and up. Can I return to the free speech claim for a moment? It strikes me in this case that what their claim really is on the free speech side is this notice is misleading because what we'd like to say in addition is, but by the way, parents, if you want to exercise this right, you're going to have to pull your kid out of this school. It's a little different than most free speech claims in that sense. Would they be violating state law if they put up a parallel notice next to it that said, if you read this, we want you to know that you've contracted with us and you really don't have the right to keep your kid in this school and have services, receive religious instruction elsewhere. Would that be compliant with state law? Again, I think this is similar to Judge Miller's question. I think stating, look, you actually, we actually don't need to comply with the duly enacted law regulation. Maybe that would cross the line. That's not what I'm saying. There's a duly enacted law, but you've waved your way. You know, you've, in effect, if you want to take advantage of that law, that's terrific. The penalty will be that you have to take your kid out of this school. Could they put a parallel sign up right next to that sign that said that without violating state law? I think so, Your Honor, that if they remind the parents, you know, whether alongside the notice in the form. Or in some way otherwise. In some way otherwise. In addition to the religious services provision, there are other laws or regulations that permit. No, I'm not talking about laws and regulations. I'm saying you have agreed with us that you will, that your child will attend mandatory services here or instruction. And if they, and if you don't want that, you've got to leave the school. I think that would be fine referencing the other laws and regulations that permit such a scheme. Why do they need, I mean, what if they just put the transcript of like the first minute of our colloquy at this argument where you said that they can require parents to do that? Print that and put it on a sign and put it next to the mandatory sign? Would that be okay? Again, I think that would be okay. This is not an issue because that's not what plaintiffs are claiming. Well, see what they're claiming is you're requiring us to say something we don't want to say because it is misleading. We're telling parents, we're posting a notice as if people attending this school had the right to send their children elsewhere for religious instruction. But that's not the case. And we don't want to have to say something misleading to our patrons. We would like to be either not to say anything or I'm making this up. Maybe your friend doesn't like it. We'd like to be able to say, but this doesn't apply to you. So I'm asking if they said that, would they be violating state law? With respect, I don't think it's misleading. I don't think the religious services provision in the context of the other laws, in the context of the contract that the parents enter into with the family. Except my premise, but answer my question. Again, I think that would be okay because the state has no quarrel, again, with a state or a preschool imposing mandatory religious curriculum. And I suppose kicking a child out if later on the parents apostatize or, you know, I don't mean to be harsh, but reminding the parents that this is part of the curriculum. This is what they signed up for. And if that continues to be a problem, then they can ask the child to leave. So in that sense, the notice of the religious services provision and if they wanted to remind the families of the contract and, you know, that there is a mandatory religious curriculum. You know, that would be, I think that would be okay because we have no quarrel, again, with this setup that requiring children, notifying parents in advance, requiring children to attend. And if parents later on decide they don't want to attend, the preschool can ask them to leave. Again, I think the notice is, it's not entirely useless information and it's not entirely inapplicable. I can imagine a situation where, again, a preschool changes their curriculum or, you know, changes to a different religion and it kind of exceeds what was written in the contract. So it is important for the parents to continue to be notified that if that's the situation, they can say like, look, this isn't what we signed up for. We don't want our children to attend this new religion, this religious services of this new religion that we hadn't signed up for. Planners had referenced their Sunday schools that, and I think in their briefs they contend that the Sunday schools provide identical services as preschools and daycares. That's simply not true, or at least that's not, it's not plausibly alleged in the complaint. Sunday schools are limited, you know, at least what they, all they've said is that at Sunday schools there is engaged in activities, religious instruction. They don't say that the Sunday schools engage in the comprehensive care and supervision, diapering, toilet training, health and safety monitoring, medication administration that preschools and daycares are required to provide. I see my time is up if there's no other questions. Looks like there are not. Thank you. Thank you. Rebuttal. Just briefly, beginning with speech, the state says it's merely the regulation, and we're talking about the personal rights regulation posting, is merely putting forward duly enacted laws. Under the National Institute of Family Advocates v. Becerra, that's the Supreme Court case known as NIFLA, it says it has to be non-controversial. And here we, this is not non-controversial. Second. What do you think, I mean, in any compelled, I mean, sort of by definition in any compelled speech case, there's somebody who doesn't want to say the thing that they're being compelled to say. I mean, that's why we have a case about it. So surely by controversial they meant something more than just somebody doesn't want to make the disclosure. So what do you think is the test for whether something is controversial? I think it has to be a common sense test. In NIFLA, the court said this is, we're talking about abortion. Abortion is controversial. And they didn't say there's a specific three-prong test for that. Here we're talking about religion. Religion is. We're not talking about. See, it's not controversial in this case. They're saying there is a state law that provides this. Luckily for you folks at your school, you don't have this right because you're going to have to take your kid out of the school if you do it. Everybody understands that. Why is it controversial? It's controversial because the churches have complete authority over the dissemination of doctrine and spiritual formation. This regulation says parents can veto that. We think that's controversial. I think you had a couple other points if you can briefly. Yeah. As far as the exemptions, the council said it didn't only apply to children four and over. That's not correct. I would point the court to the way to remember it is GMO. Subsections G, M, and O are the secular provisions, and those do apply to children under four. As far as Sunday schools, the complaint says that what they do in Sunday school is materially the same as what's done in their preschools Monday through Friday. The court under a 12B6 standard has to accept the allegations in the complaint as gospel truth. Is your argument that the state under-regulates, that if we're regulating Sunday school, it would be okay? No. I think there's good reasons why they don't want to regulate Sunday school. I think there are great reasons. One is warrantless searches. The other is they don't Mirandize people. The other is you would have to post a regulation that said, by the way, you could veto the church's rights on dissemination of doctrine and spiritual formation. Unless there are other questions, I'll submit. Thank you. Thank you. We thank both counsel for their helpful arguments. The case is submitted, and we are adjourned. All rise. This court for this session stands adjourned.
judges: HURWITZ, MILLER, SUNG